## Pablo Guzman v. The State.

No. 9859.   Delivered February 10, 1926.

Rehearing denied April 7, 1926.

**1.—Murder—New Trial—Misconduct of Jury—Properly Refused.**

Where, after conviction for murder, appellant asks for a new trial on the ground of the misconduct of the jury in discussing other homicides, not in evidence, and upon a hearing of the evidence on the motion the trial court held that misconduct of a harmful character was not shown, we cannot say that there was an abuse of the discretion of the court.

**2.—Same—Misconduct of Jury—Rule Stated.**

This court has frequently held that such matters as herein complained of, are, of necessity left largely to the discretion of the trial court, and in the absence of a showing of an abuse of such discretion, this court would be unauthorized to interfere with his ruling.

ON REHEARING.

**3.—Same—Evidence—Held Sufficient.**

On rehearing appellant insists that the evidence is not sufficient to sustain a conviction of murder. A careful examination of the record discloses that the evidence of the state was that appellant and deceased were at a dance. That deceased walked up to appellant, and took him by the arm, and asked him for a drink, whereupon appellant shot and killed him. The testimony of appellant is only slightly in conflict with that of the state. In our judgment the evidence fully warrants a conviction of murder.

**4.—Same—Misconduct of Jury—No Reversible Error Shown.**

Appellant also urges on rehearing that our original opinion on the question of misconduct of the jury was in error. We cannot agree with him. While it was shown on the hearing of his motion for a new trial that some one of the jury remarked that there was too many murders in Atascosa County, there was nothing shown that such remark was harmful to appellant. After hearing the testimony of all the jury, the trial court held against him, and we are not authorized to disturb his findings.

Appeal from the District Court of Atascosa County. Tried below before the Hon. Covey C. Thomas, Judge.

Appeal from a conviction of murder, penalty fifty years in the penitentiary.

The opinion states the case.

*J. R. Garnand* of Jourdanton, for appellant.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—Appellant was convicted in the district court of Atascosa County for the offense of murder and his punishment assessed at fifty years in the penitentiary.

The record in this case discloses that the deceased, Manuel Granado, and appellant were both Mexicans, and were attending a dance or Mexican gathering, and the deceased put his hand upon the appellant, or caught him by the arm, and asked him for a drink, at which time the appellant jerked loose from the deceased, and shot and killed him. It was the contention of the state that said homicide was with malice and without cause or provocation on the part of the deceased. The appellant's defense was based upon insulting remarks alleged to have been made by the deceased relative to his daughter prior to the date of the homicide and self defense. The state introduced the confession made by the appellant shortly after the homicide, in which he stated and admitted that at the time of the killing he did not see deceased have in his hands any knife, gun or other weapon. It was also shown that after he had been informed of said insulting remarks, that both of them had been at the dance together from some time in the early part of the night until about 4 o'clock in the morning, when the homicide occurred.

The court in his charge properly submitted all phases of the law raised by the testimony to the jury, and without any objection thereto by appellant's counsel. The appellant contends that the testimony is insufficient to sustain the verdict, and that the court should have granted him a new trial on that account; and also alleged misconduct of the jury. It was contended on motion for new trial by appellant that the jury discussed other homicides while considering their verdict, without any evidence thereon, and that same was detrimental to him. The record discloses that this contention was contested by the state, and the jurors or the larger portion of same were introduced as witnesses, some of whom testified they did not hear the matters complained of mentioned in the jury room, and some of said jurors testified that after they had retired and all agreed the defendant was guilty, but had not reached a decision as to the amount of his punishment, that either during the night thereafter or next morning, that some mention was made in the jury room about there being too many killings in that county, and unless it was stopped they would not have any Mexican cotton pickers. Some of the other jurors testified that they heard

such a remark, but were not sure whether it was made after the jury's discharge, or whether it was made during their attendance at that term of court; while others testified they heard no such remarks, and the juror who it was claimed made such statement, denied any knowledge of making or hearing it made. The record discloses that the remarks as to other killings, if made in the jury room at all, were only mentioned in a casual way and no particulars were discussed, and after a careful examination of the entire testimony as shown by this bill, it appears that the issue raised became an issue of fact for the trial court, and we are unable to say that in his action overruling said motion, he abused his discretion thereby. This court has frequently held that such matters as herein complained of, necessarily have to be left largely to the discretion of the trial court, and in the absence of a showing of an abuse of such discretion, this court would be unauthorized to interfere with his ruling.

We are also unable to reach the conclusion that the evidence in this case is insufficient to warrant a conviction for murder.

After a careful examination of the entire record, we are of the opinion that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Judges.

ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—The sufficiency of the evidence is questioned. According to his testimony, appellant was forty-three years of age, and a man of family. He was a farmer. The deceased was about the same age as the appellant and also a man of family. From the appellant's testimony we quote:

"I saw him there at the dance about the 20th of July, 1924. Me and my wife and my daughter went to the dance. * * * She is about seventeen years old. * * * I carried a pistol with me when I went over to the dance. I carried that pistol to protect my family."

The killing took place about five o'clock in the morning. Appellant said that he had been told by his wife a few minutes before the shooting that Manuel Granado, the deceased, wanted to dance with the daughter of the appellant; that she was told

not to dance with him as he was drunk. Appellant further said that he came back out to the other side where there was a wagon, and was standing by the wheel when deceased came up. Appellant had been told that deceased wanted to have intimate relations with the daughter of the appellant. This information came to him in his field about three days before the homicide. The previous relations between appellant and deceased had been friendly. According to the appellant, on the occasion of the homicide, the deceased came and asked him for a drink and used an oath. Appellant said that both he and deceased had had two or three drinks that night, at least the deceased appeared to have been drinking. There had been no previous conversation between the two that night. Appellant said:

"He told me if I did not give him a drink he would jump on me once and three times on my family. When he said that he caught me by the jacket here on the shoulder as he said that. I unbuttoned my coat and turned around, he followed me, he pulled my coat off of me and I turned around and shot him. I shot him because I was afraid of him, because of what he had said about my family. I judged him to be angry by the way he took me by the shoulder when he caught me by the jacket."

In his cross-examination, appellant said that he saw no weapon upon Granado; that there had been no previous trouble between them; that Granado had been seen by him that night during the dance and passed through the crowd; that he saw him about two or three hours after the dance began.

In addition to his testimony, the written confession of the appellant was introduced, which coincided in the main with his testimony except that there was no reference therein to any threat to have intimate relations with the daughter of the appellant.

The state's testimony, coming from the son of the deceased, was to the effect that deceased and appellant were standing together; that deceased caught the arm of the appellant and was told to release him. From his testimony we quote:

"Pablo Guzman got his arm loose and when he got his arm loose my father turned him loose. Pablo Guzman pulled off his jacket and threw it up on a barrel. He went off a few steps pretty fast and turned around and shot him, my father."

The deceased was unarmed. He was in the habit of getting drunk whenever he went to a dance, and his son was with him, fearing he might have trouble.

There was testimony that appellant bore a good reputation for peace and quietude. The deceased had the reputation of a

violent and quarrelsome man when he was drunk; that he was in the habit of drinking intoxicants.

The court submitted the issues of self-defense, and manslaughter in a charge which appears unexceptional and against which no exceptions were addressed. We would not be warranted in holding that the issue of murder was not raised by the evidence. The state of mind in which appellant fired the fatal shot whether rendered by passion incapable of cool reflection, was a matter necessarily for the jury to determine. Having decided the issue against him upon sufficient evidence and under a proper charge, the conclusion is binding upon this court. The penalty, while heavy, was under the law within the discretion of the jury.

The attack upon the verdict of the jury is upon the ground that new and material testimony prejudicial to the appellant was brought before the jury in its retirement. If we comprehend the record, this averment is based upon the claim that the foreman of the jury, Stanhope Henry, explained to the jury his version of the killing of one Maldonado, another Mexican in Atascosa County, a few weeks prior to the present homicide, and that he mentioned other killings; that these other homicides were used in argument as a reason for assessing the extreme penalty against the appellant. We have carefully re-examined the bills of exception in which there is embraced the testimony of the various men who composed the jury. From their testimony it is apparent that there had been other homicides in the county at various times. Some of the jurors claimed that these were mentioned by the foreman Henry. As we understand it, practically all of the jurors who gave testimony to that effect admitted that no remarks of that nature were made by anyone until after the jury had voted the appellant guilty of murder. The trial court was justified in concluding that if arguments along that line were made, they took place either after a verdict was agreed upon or while they were deliberating upon the penalty. From the testimony of the foreman, we quote as follows:

"My name is Stanhope Henry. I was foreman of the jury that tried Pablo Guzman at this term of court. I don't remember hearing any remarks made after we began discussing at the table and during our deliberations with reference to the fact that there had been too many killings in Atascosa County. I don't recall making any such remarks myself, and certainly not to influence anybody and I was not influenced in arriving at my verdict by anything other than the law and the evidence in

this case. If it is admissible I don't mind telling how I stood in the case. There was no question about guilt in the mind of anybody; that was decided and the question then before the jury was the term of years, and I know that I cast a vote for the lowest term of years; that is the lowest term of anyone else, and I did that in view of the fact that this man was a very ignorant man and he seemed to try to tell the truth. I hadn't a doubt but that this man had committed a crime against the laws, for which the extreme penalty was hanging, but for his ignorance and truthfulness on the witness stand, this jury would have hung him."

The testimony of other jurors is very meagre and indefinite. One of the jurors testified that according to his best recollection, somebody stated that the county had a bad record during the past year in regard to homicides. This same juror and others disclaimed any knowledge of any argument unfavorable to the appellant, based upon references to other homicides. We gather from their testimony that the jury knew of other homicides, but are constrained to believe that the learned trial judge was well within his rights and within the record in concluding that there was no use of this knowledge made against the appellant. It was manifest from the testimony of Henry that the averments in the motion upon the subject were at least controverted. The rule which obtains in such a case is that when evidence of misconduct of the jury, or the receipt of other testimony heard upon the motion for rehearing, is conflicting, this court is bound by the decision of the trial court. In view of this rule, we are not prepared to say that the conclusion of the trial court that there was no new evidence and no prejudicial use of the knowledge within the minds of the jurors during their deliberations is not supported by sufficient evidence.

The motion for rehearing is overruled.

*Overruled.*